**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| Rhinehart Railroad Construction, Inc.<br>1600 Angleside Road, Suite A<br>Fallston, MD 21047<br><br>Plaintiff,<br><br>  v.<br><br>Enviva Pellets Hamlet, LLC<br>1125 N. NC 177 Hwy<br>Hamlet, NC 28345<br><br>Serve:<br><br>The Corporation Trust, Incorporated,<br>Registered Agent<br>2405 York Road, Suite 201<br>Lutherville, MD 21093<br><br>Defendant. | Civil Action No. |

**COMPLAINT FOR BREACH OF
<u>AGREEMENT AND UNJUST ENRICHMENT</u>**

**<u>Parties</u>**

1. The Plaintiff is Rhinehart Railroad Construction, Inc. ("Plaintiff" or "RRC"), a Maryland corporation located at 1600 Angleside Road, Suite A, Fallston, MD 21047.

2. Defendant Enviva Pellets Hamlet, LLC ("Defendant" or "Enviva") is a limited liability company organized in the state of Delaware with its principal business address located at

RRC v. Enviva

1

1125 N. NC 177 Hwy, Hamlet, North Carolina 28345.

## Jurisdiction and Venue

3. Plaintiff re-alleges and reincorporates herein the allegations of Paragraphs 1-2, above.

4. Subject matter jurisdiction over this matter lies with this court pursuant to 28 U.S.C. sec. 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. Venue is proper in the District of Maryland under 28 U.S. C. sec. 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in the state of Maryland.  Namely, Defendant's entire nerve center is based in Maryland, specifically at its corporate headquarters located at 7200 Wisconsin Avenue, Suite 1000, Bethesda, MD 20814.

## FACTS

### The Grading Project

6. Plaintiff re-alleges and reincorporates herein the allegations of Paragraphs 1-5, above.

7. Plaintiff is engaged in the business of providing high quality comprehensive railroad design, construction, earth work and repair services to mainline, short line, industry, and government railroad projects.

8. In early 2018, Plaintiff was hired by Defendant to provide consulting and other services related to the construction of a railroad track at Defendant's wood pellet plant located in Hamlet, North Carolina.  That work is not at issue here, as RRC performed such services and Defendant paid for such performance in full.

9. However, based on that preexisting relationship and the services provided by RRC, on

August 31, 2018 RRC received a call from Kevin Drennan, a Project Manager for Defendant, requesting that RRC provide new services unrelated to the previous railroad track work to be undertaken at the Hamlet, NC plant, specifically, grading and other general construction site work (the "Grading Project").

10. Upon Defendant's request, RRC started mobilizing immediately.

11. While RRC's previous railroad construction work was governed by a Construction Services Agreement executed by the parties, no written agreement was executed by the parties for the Grading Project services provided by RRC to Defendant.

12. Rather, through a series of emails and documents exchanged by the parties, RRC and Defendant entered into an agreement for services.

13. On September 7, 2018, per Defendant's request, RRC sent its rate sheet to Drennan. Drennan verbally approved the rate sheet, and as a result, RRC began mobilizing its earth work equipment. As a result, RRC began work on the Grading Project that same day. (See email and initial rate sheet attached as Exhibit A.)

14. Thereafter, at the beginning of each day for the duration of the Grading Project, Drennan or James Agnew, an employee of Defendant, directed RRC on what work to perform that day.

15. On September 13, 2018, RRC received a call from Drennan requesting RRC to provide pricing on a time and materials basis with hourly rates since more activities would be requested by Defendant. Using a time and materials basis allowed Defendant to request additional services and additional workers from RRC, and allowed RRC to be paid for each of these specific services accordingly.

16. Over the course of the next several months, Drennan and Agnew on behalf of Defendant,

and RRC Vice President Richard Rhinehart, Jr. ("Rhinehart"), had numerous discussions and traded many emails as RRC's budget and scope of work continually changed.

17. On October 24, 2018, Drennan and Agnew told Rhinehart during a conference call that this was a "time and materials job, so keep doing what you are told to do."

18. On November 21, 2018, RRC received its first purchase order for work performed on the Grading Project in September 2018, in the amount of $250,000. On November 28, 2018, January 14, 2019, January 24, 2019 and January 29, 2019, RRC received four (4) additional purchase orders totaling $997,000 for work performed on the Grading Project through early December, 2018. RRC was paid in full for each of these five purchase orders.

19. On April 9, 2019, RRC received an additional purchase order totaling $249,000 for work performed on the Grading Project through mid-January, 2019. (The six purchase orders paid in full by Defendant in the amount of $1,496,000 are attached as Exhibit B. Because each purchase order contained identical terms and conditions, only one set has been included here.)

20. In response to RRC's repeated requests for payment, on April 24, 2019, Mark Keatts, Contract and Risk Manager, and Bill Little, VP of Construction, directed RRC to continue working. (See email attached as Exhibit C.)

21. On May 3, 2019, Rhinehart emailed Defendant an outline of all amounts owed as of April 30, stating that all purchase orders needed to be provided by May 6, 2019 to ensure prompt payment. Defendant responded in the affirmative. (See emails attached as Exhibit D.)

22. On May 9, 2019, RRC, having received no further purchase orders or payments from Defendant, finally ceased doing work on the Grading Project. By that date, RRC had

worked for four months beginning in mid-January, 2019 and ending in May, 2019 without payment.

23. On June 10, 2019, Keatts emailed Rhinehart stating that in regard to the amounts "be assured that we are working on getting this done."

24. In early June, 2019, Defendant convinced RRC to return to the Grading Project by providing an additional purchase order and corresponding payment in the amount of $904,000. At the time, Defendant told RRC that this purchase order would apply to work beginning on June 12 moving forward, and that one or more purchase orders would be provided to cover the services previously undertaken by RRC between January - May, 2019, which amounts remained unpaid.

25. Despite further assurances from Keatts, and despite the fact that RRC fulfilled the immense amount of work requested by Defendant, Defendant failed to pay Plaintiff the amount of $1,374,234.83 due for the work performed between January- May, 2019 on the Grading Project. (See invoice attached as Exhibit E.)

## The Hurricane Cleanup

26. Plaintiff re-alleges and reincorporates herein the allegations of Paragraphs 1-25, above.

27. In the early stages of work on the Grading Project, on September 18, 2018, Drennan, the Grading Project manager, called RRC and asked whether RRC would provide cleanup services unrelated to the Grading Project at the Hamlet plant after it was decimated by Hurricane Florence in September, 2018, specifically, erosion and sediment, culvert and hurricane-related repairs ("Hurricane Cleanup Project").

28. RRC accepted Defendant's request to take on this additional work. As with the Grading

Project, no written agreement was executed by the parties governing the Hurricane Cleanup Project.

29. Over the next several months, as RRC's crews worked daily on the Grading Project and Hurricane Cleanup Project simultaneously, RRC and Drennan traded numerous emails, proposed budgets, change orders, invoices and requests for work, due to the fact that Defendant's scope of work for the Hurricane Cleanup Project constantly changed.

30. At the outset, RRC included its Hurricane Cleanup services in its invoices for the Grading Project. Eventually, on December 12, 2018, Defendant told RRC to begin invoicing the Hurricane Cleanup Project separate from the Grading Project. As a result, amounts owed for Hurricane Cleanup services provided by RRC prior to December 12, 2018 were paid by Defendant under the Grading Project purchase orders.

31. On March 11, 2019, Rhinehart emailed Drennan all costs for the Hurricane Cleanup Project work done in February, 2019. (See attached as Exhibit F.)

32. On March 20, 2019, Rhinehart emailed Drennan RRC's projections to finish the Hurricane Cleanup Project along with all of RRC's costs through March 17, 2019. The projections utilized by RRC were based on the scope of work Defendant provided to RRC at the time.

33. On April 4, 2019, numerous representatives of Defendant, RRC and various third parties met on site at the Hamlet plant to inspect the plant and review the Hurricane Cleanup Project. Rhinehart, Drennan, Agnew, and other employees of Defendant, including George Hilton, Kenneth Crump and Andy Antczak, along with others attended. Defendant presented an outline of what work had been completed and what work needed to be done to finish. After the presentation, the representatives walked the Hamlet plant site.

34. During this visit, Defendant identified significant additional damage caused by the hurricane that needed to be repaired.  As Defendant laid out the additional work, RRC budgeted the work accordingly.

35. On April 8, 2019, Rhinehart sent the requested updated budget to Defendant.  (See attached as Exhibit G.)

36. Although Drennan notified Rhinehart that the requisite purchase orders would be delivered to RRC no later than April 22, 2019, no purchase orders were received by RRC.

37. Drennan resigned his position with Defendant on April 23, 2019.

38. On April 24, 2019, Keatts emailed Rhinehart stating that RRC should continue with the Hurricane Cleanup Project even though no purchase orders had yet been produced and RRC had not yet been paid for any work already performed.   (See attached as Exhibit H.)

39. On May 9, 2019, RRC ceased work on the Hurricane Cleanup Project due to the fact that it still had not received a single purchase order for this work, and therefore had not been paid any amounts for its Hurricane Cleanup work, performed between January - May, 2019, in the amount of $1,006,047.86.  (See invoice attached as Exhibit I.)

## COUNT I

## BREACH OF AGREEMENT – GRADING PROJECT

40. Plaintiff re-alleges and reincorporates herein the allegations of Paragraphs 1-39, above.

41. Despite the numerous requests for services by Defendant, the documents and correspondence between the parties clearly showing Defendant's agreement to pay, and the substantial services provided by RRC, Defendant has failed to pay Plaintiff significant

amounts owed for the Grading Project.

42. RRC requests all amounts due for the Grading Project in the amount of $1,374,234.83.

## COUNT II

## **BREACH OF AGREEMENT – HURRICANE CLEANUP**

43. Plaintiff re-alleges and reincorporates herein the allegations of Paragraphs 1-42, above.

44. Despite the numerous requests for services by Defendant, the documents and correspondence between the parties clearly showing Defendant's agreement to pay, and the substantial services provided by RRC, Defendant has failed to pay Plaintiff amounts owed for the Hurricane Cleanup Project.

45. RRC requests all amounts due and owing for the Hurricane Cleanup Project in the amount of $1,006,047.86.

## COUNT III

## **UNJUST ENRICHMENT – GRADING PROJECT**

46. Plaintiff re-alleges and reincorporates herein the allegations of Paragraphs 1-45, above.

47. Defendant has failed to pay Plaintiff the amount of $1,374,234.83 as a result of the services RRC provided for the Grading Project.

48. Defendant has been unjustly enriched due to the performance of such services by RRC for which Defendant has received the benefit of the services yet failed to pay the sum owed of $1,374,234.83.

## COUNT IV

## **UNJUST ENRICHMENT – HURRICANE CLEANUP**

49. Plaintiff re-alleges and reincorporates herein the allegations of Paragraphs 1-48, above.

RRC v. Enviva

8

50. Defendant has failed to pay Plaintiff the amount of $1,006,047.86 as a result of services performed by RRC under the Hurricane Cleanup Project.

51. Defendant has been unjustly enriched due to the performance of such services by RRC for which Defendant has received the benefit of the services yet failed to pay the sum owed of $1,006,047.86

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays:

52. The Court issue an award in favor of Plaintiff for the Grading Project services in the amount of $1,374,234.83; and,

53. The Court issue an award in favor of Plaintiff for the Hurricane Cleanup Project services in the amount of $1,006,047.86; and,

54. The Court award Plaintiff all costs and expenses incurred in enforcing Plaintiff's rights in this matter, including all of Plaintiff's attorney's fees; and,

55. For such other relief that the Court may deem just.

Respectfully submitted,

/s/
Raymond Thomas McKenzie, Jr.
Fed. Bar No. 17726
60 Market Street, Suite 205
Gaithersburg, MD 20878
(301) 330-6790
Fax (301) 977-9018
Ray@mckenzie-legal.com